Good morning, Your Honors. Donald Cook for Plaintiffs. Facts matter here. The plaintiffs, Mr. Wood, Ms. Lopez, Mr. Cortez, along with others, set up this fundraiser with a group using a commercial warehouse, downtown Los Angeles, Sunday evening, where it's not going to cause a disturbance to neighbors. No drugs allowed, no alcohol served. It's to raise money for an anarchist book fair. So, the event's getting underway. A mile away, there's a beer run. Six male Hispanic juveniles. The police don't go to the convenience, the gas station or convenience store where it happened. They drive around. They see the truck matching the suspect description parked around the corner from the warehouse, and they see a lot of young people going in the warehouse. So, it's clear that the police aren't wanted. They try to get permission to enter. Mr. Cortez denies it. They force entry. They grab Mr. Cortez. A lot of people inside don't like the police presence, and they let the police know that. Some lightweight board strikes an officer from behind. They don't know if someone pushed it or it just happened. Now, they're outside the warehouse. They've got Mr. Cortez restrained. Let me ask you something, Mr. Cook. Was there a sign outside of the warehouse saying police not wanted? No, there wasn't a sign outside. The public was invited. They wanted to raise money for the anarchist books. But the public, in this case, did not when they arrived. I mean, you put up a sign. I don't think that is carte blanche for the people running the event to allow anyone inside when they determine, you know, you're not the kind of person we want here. And obviously, the... So, your position is that Mr. Cortez and Lopez were licensees of the man who otherwise had possession of the warehouse, and that the public was invited without an admission by the licensees that each member was admitted, but they had the power under their license to exclude the police from public entry. The problem I have with your Honor's question is it seems to assume certain facts I know defendants have argued, which is they want to argue the legality of whether or not Ms. Cortez and others had formal permission from the landowner. I say you have to look at the facts that's presented to the officers at the time. And just because they don't know offhand whether or not this is properly licensed or not doesn't mean they can ignore the people who appear to be in charge, which is why they went and spoke to Mr. Cortez, because he was standing at the door, who says this is a private party, you have no right to enter. I think they have to respect that absent some exigency or other power they would have under the Fourth Amendment. And here, there was no exigency. There was certainly no suspicion that any of the plaintiffs were involved in any criminal activity. And that, you know, you can tell I'm trying to rationalize or analyze this on property concepts. Lopez and Cortez, you say, whether they were licensees or whether they weren't, were at least possessors of real estate. That's correct. And as possessors, they could bar the entry of anyone who they didn't want to come in, even though they were inviting the public in. So they could passively allow the public to infiltrate. But when they saw a policeman dressed in blue, they could say, I don't want you in here. I think that's absolutely correct. I mean, they had the permission from Mr. Holliday, one of the co-tenants. Whether they had permission or not doesn't make any difference as far as long as they're possessors of real estate. They were possessors of real estate. And the major issue here is the individualized suspicion requirement. Right? I mean, I think essentially, whether they admitted or not, the defendants concede there was an individualized suspicion. Their major argument, there was no requirement for it. The general rule is there has to be individualized suspicion. There are a few narrow exceptions, none of which applied here. Of course, none of the plaintiffs matched the description of the six male Hispanic juveniles. All right? Well, there's a lot to talk about the activity of the people here. You know, they were hostile, they were aggressive, yada, yada, yada, and they go on and on about that. But eventually they admit what they really are arguing here. The people here did not like the police and they told the police. But when it came down to hard facts, suggesting that anybody here committed a crime or threatened some type of assault, they had none. Officers Cervantes and Joe both admitted to that. No, there weren't actually any threats of violence. No one tried to hit, no one tried to strike. I mean, I know, I know, there is that lightweight partition board that, you know, they don't know how it falls on one of the officers, but it does fall. But there was nothing. And there was certainly no evidence of anyone being armed or dangerous or reasonable suspicion to think someone was. And what do they do? They grab everybody, order them out, line them up against the wall. Hey, it didn't matter if you were male or female, didn't matter if you were white, black, Hispanic, didn't even matter if you could walk. They had an African-American paraplegic in a wheelchair and they line him up as part of this process. Now, this happens because of who they are. They're a politically powerless group. Some look at them with having fringe beliefs, anarchist, book fair. If this were your traditional... Did the police know that? Well, Officer Cervantes said, I think they're anarchists, when this is all said and done. Certainly didn't know it going over there that they were walking into the middle of an anarchist, of a fundraiser for the anarchist book fair. Well, they didn't know it was the anarchist book fair when they got there. They did know it was obviously an event of some sort, a bunch of people gathering. Presumably, they saw the musical instruments and could figure out at some point that, yeah, this is not part of some conspiracy to commit bear runs at convenience stores, okay? It was obviously a social gathering of some type and they admit that. What I'm saying is, whatever you think of what their activities, whether you approve of them or not, they had no business grabbing everyone and treating them as if you are suspects in our crime that we're investigating and holding them for 45 minutes, doing pat-down searches when you had no facts to suggest that anyone was armed or dangerous, no facts suggesting that any particular plaintiff had done anything wrong. Yes, lots of people were upset, told the police what they thought about their activities, didn't think they had a right to be there, didn't think they had a right to enter, and didn't have the right to hold anybody. Mr. Cook, before you finish your argument, I hope you'll get to the heck versus every question. Yes. Really, I think the case is nonet, this circuit's decision. It really comes down to, is habeas relief available? And by available, meaning, did the party have a right to pursue habeas relief in a reasonable manner? What's your understanding of nonet if the defendant had had an opportunity to file for habeas but didn't file it? Well, then you look at the Guerrero decision, right? The follow-up decision. If you had the right to pursue habeas, but you know, you're dilatory, don't pursue it, then nonet wouldn't apply. And why doesn't the same principle apply to failing to exhaust your right to direct appeal or to other things? Because there is no right to habeas on an appeal out of an infraction conviction period. But there is a right to appeal. You could take... And he didn't appeal. He did not take an appeal. It became a conviction final. The conviction, the infraction conviction was final. So he didn't exhaust his remedies before... He did not exhaust, pursue any appellate remedies. I will grant you that. What I am saying, for the HEC bar to apply, there has to be availability of habeas or expungement, and neither was available in this case. Why not? Well, for expungement, it's Penal Code Section 1203, California Penal Code Section 1203A, I think it is. Expungement is not available for an infraction conviction. And habeas is not available. Could he have taken a direct appeal? After pleading guilty, I mean, you could file a notice of appeal. You're going to run into the bar of... It's done all the time. You plead guilty. You're convicted for the crime. You reserve the right to appeal on the grounds that the conviction is based on unconstitutional grounds. It's done all the time. Well, I know it's done a lot in the crimes that come before this court. But it wasn't done here. It wasn't done here. I'm not sure it's available for an infraction. Remember an infraction is basically... Oh, yes. It is available for an infraction in California. I'll defer to whatever authority Your Honor is referring to there. But my point is, I made it. I think Nonet is the controlling case. Guerrero, which limits the Nonet rule, doesn't apply here because habeas was never available at any point on the infraction charge. Under People v. Egbert, 59 Calaf, 4th 503, you can appeal an infraction or a misdemeanor. I know you can appeal an infraction. I mean, after a guilty plea. Okay. Okay. As I said, I'll defer to Your Honor's authority. So he didn't exhaust his direct appeal. And I believe that Heck v. Humphrey has in that string of procedures, which they mentioned, direct appeal as well as habeas. Well, it's true. It is there in Heck. So anyway, I know that issue will be resolved one way or the other. The central point in this case, as I come back to, is the requirement of individualized suspicion. It's a general rule. There are no exceptions that apply here. No claim that any plaintiff involved in any kind of criminal activity. And certainly no claim that anybody, be it Javier Cortez, their actual theft suspect, or somebody else, was armed or dangerous. And therefore, the jury should have been instructed that the seizure of every plaintiff was unlawful. The pat-down search of every plaintiff was unlawful. As well as being able to go forward on their 52.1 claim under California law. Because, you know, what do the police do afterward? They close down the event. Because, well, we can't be satisfied that what's going on here is lawful or not. We haven't seen anything illegal. You know, putting aside for a moment their 148 beef, they close it down. I suppose if they see some party in a neighborhood going on, and they don't see the homeowner immediately available, they can close down that party and order everyone to go home. I mean, I think there's a problem here with the burden of proof. So, for those reasons, I would submit that the judgment should be vacated and remanded with instructions. Thank you. Thank you, Mr. Cook. Ms. Berger? Good morning. Deputy City Attorney Lisa Berger for Appalese. This court has said many, many times that in any Fourth Amendment inquiry, the question is reasonableness under the totality of the circumstances. And that's what needs to be looked at here, is an entire set of circumstances. You can't just piece it apart. There were six juveniles at the initial beer robbery, which was more than beer, but I'm not going to get into that. We had a situation here where you have two officers. If the officers were investigating the beer robbery and saw the truck with the correct license plate in front of a home, could they go into the home? If there were 50 people walking in and out of the home, having a party, and use a plane, certainly. It's just a home. Can they walk into the home and knock on the door and say, we just want to look in the bedrooms and see if we have six juveniles who match this description? They can knock on the door and ask to come in and look for the juveniles. But they can't just go in, can they? Which is exactly what the police did here. They went up to Mr. Cortez, who was standing by the door. They explained there had been a robbery. They wanted to bring the victim to walk through. But if the homeowner says, no, I don't want you in, then the officers have to go back and get a warrant. If the homeowner just stands there and says, no, I'm sorry, I'm not going to let you in, you're correct. That's not what happened here. So tell us what the property rights are here. There weren't any, actually. The one man who was the sub lessee of the warehouse was not present. He had given keys and permission for use of the warehouse to a number of people, two of whom were present. None of them had any exclusive right to the warehouse. None of them had the ability to exclude anyone else, not even each other. Yes, Your Honor. Ms. Berger, question. Yes. Were Cortez and Lopez in possession of the real estate at the warehouse for the purpose of holding an anarchist book fundraiser? I would say no, Your Honor. None of them had legal rights. Were they interlopers? Were they trespassers? Yes. Who had the right to enforce that? Mr. Haglund, I believe was his name, was the actual sub lessee of the property. He had been told there would be some people coming over for a fundraiser, but he did not know there would be a large public concert. He himself did not have the authority to hold that. Did he prohibit Cortez and Lopez from using the warehouse? No. Come on, let's not fight that.  Let's not fight the facts. Cortez, Lopez, and everybody else who was in that warehouse was there under some type of permission from the owners of the warehouse or from the people who were involved. They weren't trespassers. They didn't break their way in, did they? They were not burglars, no. They had a key. Did they not have a key to get into the place? I think so. Now, secondly, let me ask you this. Can a possessor of real estate bar the entry of someone who doesn't he doesn't want to come on to his real estate? If you open your property up to the public, then you have given up whatever right you may have had to exclude. You have no. We're talking. If you're talking about a member of the public has come up and said, I am not an anarchist. As a matter of fact, I'm a member of the Tea Party. I'm a right wing nut and I hate anarchists. Can I come in? Could they have said, no, you can't come in. That's different than your Fourth Amendment rights of search. Could they have stopped them from coming in? Probably. But if that person forced their way in, it would not be a Fourth Amendment violation. Because it's not state action. Of course. And I would say the same is true regardless. There's the law says that there are instances where you may have a trespass, but that isn't a Fourth Amendment violation. That's the open fields doctrine, right? The open field doctrine. It can be a trespass, but it's not a search. That's one example. But there are other examples. And in this case, nobody had any constitutionally protected property interest in that thing. The fact that you're legitimately on the property does not give you a Fourth Amendment protected right. Do you have a case that says a possessor of real estate doesn't have a right? Possessor is different. These are just the fact that you're just legitimately. And I would have to quickly look through my brief to find exactly where I've cited that. Cortez and Lopez somehow got the key consensually. There's no claim that they stole the key from somebody, right? There's actually a question as to whether or not they used a key to get in there. The warehouse was open. Mr. Holiday was actually there working. He was unrelated to the event. He did have a key. He didn't throw Cortez and Lopez out. No, they had a legitimate right. To be there. They believed they had permission. They did not. But the fact that they were allowed into the property. If I came home and I found out that there was a big party going on in my house because my housekeeper told a friend, yes, you can go over there and watch TV. And that other person invited 100 people. To me, that would be a trespass. Would your housekeeper be able to keep the 101st out? Pretty much so. Doesn't like the looks of them? Not dressed right? Whether she could or couldn't. And in my scenario, she wouldn't even be there. The sub lessee was not there. The people he gave permission to did not have permission to invite 100 people and set up bands in an open warehouse that had no private rooms. The public was invited into all portions of the warehouse. Your position is the public includes uniformed policemen to an anarchist rally. My position is that there is no Fourth Amendment protected right to exclude state actors when you do not have any private protected, constitutionally protected right to that property. But you admit they were legitimately using the property. You said that before. No, actually, I said they weren't. Your position is that the record is clear they were trespassers. The record is clear that the sub lessee, Mr. Haglund, did not have the authority to hold large events in that property. So he could not give that authority to his friends that he said, oh, yeah, sure, here's the key. Go ahead and build your sets or paint your paintings or have a few people over to raise money for your event. He did not have the authority himself to hold such a large public event. So he couldn't give that authority to anybody else. More importantly, if we're talking about the Jones case that appellants rely on so heavily and the Grady case that they sent notice of yesterday, both of those cases talk about what is and is not a search. And they basically say if you have a constitutionally protected expectation or right to your property, in the Grady case it was your own body, in the Jones case the wife's car, then it is a search when state actors invade that constitutionally protected property. We don't have that here. This is a standing case. We're not trying to determine whether going into a warehouse would be a search if you had that right. We're talking about whether any of these plaintiffs had that right and none of them did. None of them had any constitutionally protected right to the property and none of them had any expectation of privacy in the warehouse. So there could not be a Fourth Amendment violation regardless of whether any of them thought that they were properly on the property or thought that they had the right to throw that party in the warehouse. Now in terms of what the police knew when they arrive, all they know is there's a big party and the first thing they do is say we'd like to speak to the owner or the person who's in charge so that we can bring our victim in to look. At no time... And that's Cortez that they talk to. Right. And Cortez says no. Cortez says no, but then he backs off. He's acting a little strange. He fits the description of the young Hispanic. Nobody has ever disputed that. And so the officers say wait, stop, we want to talk to you. And they have the right to do that under Terry. Then again... They have the right to follow him into his house? They have a right to say stop, we want to talk to you. He then doesn't say... What if he's at the door of his house? Even if he's at the door of the house and if he just then stops and says no, I'm sorry, I don't want to talk to you, I don't want to allow you in my house, end of story. The police have to stop. But he didn't do that. He ran into the place, he slammed the door. So now they don't know... Didn't he tell them that they were not welcome, that they could not come in? Yes. Okay. And then he tried to close the door. But again, he didn't just stop and say no, I'm sorry. This isn't the threshold of a house where you'd say no, I'm sorry, and you shut the door. He's some feet in front of the warehouse as he's trying to move away, to run away, which cases have held, running away is probable cause. And they ask him to stop. He doesn't. He then runs in and shuts the door. Now he's interfering. He's... At least there's probable cause to believe he's violated Section 148. And at that point, they can follow him in, even if this were a house. And remember, this is not a house. This is a warehouse open to the public. Well, pardon me. Judge Gutierrez found that he, that is Lopez, Cortez, forcefully attempted to shut the door. Then Officer Cervantes pushed it open. So it wasn't a matter of him running away and being probable cause. He was trying to keep Cervantes out, and Cervantes pushed him away, and then he ran away. Is that probable cause? The door happened in the middle. He's already run off. He's backed away. He's moving rapidly into the warehouse before he gets to the door, and the officers say, wait, stop. No, no, no. You're misreading the facts, but go ahead. That can obviously be cleared up by looking at the record. I think so. They have reason to believe that there's stuff going on here. They don't know whether this is a legitimate warehouse party. These unlawful underground parties happen all the time without the permission of the owners, so they have that to be concerned about. The theft vehicle, which was identified, as Judge Bybee pointed out, by the license plate, was right around the corner. Mr. Cortez matches the description of the beer and vandal theft suspects, and he's acting very suspiciously. He's very defensive. He's backing away from them. They have certainly reasonable suspicion to say, hey, wait a minute, we need to talk to you a little bit here, and he continues to back away. He shuts the door. He attempts to shut the door. They follow him in. Again, this is an open warehouse open to the public, and once they get in, all of a sudden, there's a huge crowd of people in this dim room, and they're not staying away. They keep advancing. The officers say back up. They back up a step. They advance again. That's also a violation of 148, and it certainly would give any reasonable officer concern about exactly what these people are going to do, but they just take Mr. Cortez. They go outside. As far as they're concerned at that moment, they could be done, but some of these people follow them out, and they continue to advance and to get close and to get within a few feet of where they're trying to take Mr. Cortez into custody. They're dividing the attention of the two officers. Officer Cho has to struggle with Mr. Cortez, who's continuing to resist, while Officer Cervantes has to turn his attention to these other people, therefore delaying and impeding the investigation. Counsel, before you finish, I hope that you'll get to Heck versus Humphrey question. Actually, I think the court addressed exactly what the city's argument would be. Mr. Cortez had the opportunity. He did not have to plead guilty. He could have gone ahead and pursued his rights, whether he pleaded. Does the fact that he pled guilty then take this outside of Justice Souter's concurrence in Spencer and his concurrence in Heck? Well, I'll answer that two ways. First of all, as I was about to say, that even because of pleading guilty, and again, as Judge Bay pointed out, he had the right to appeal. You don't have to have a right of habeas corpus. That isn't the only way that you can get rid of a conviction. No, but the court also said that even though we have an exhaustion requirement in habeas, we don't have an exhaustion requirement in 1983. Correct. So does he have to exhaust that? Well, he has to have gotten rid of his conviction in some way, whether it's by appeal or by habeas, by expungement. There's any number of ways you can get rid of it. As long as you had some opportunity to have your conviction wiped out, it doesn't matter which form of opportunity it was. If you didn't take that opportunity, the conviction still stands in Heck Applies. But if he had taken an appeal and the appeal had been denied, could he bring the 1983 suit now? No, because his conviction would still be standing. The Spencer concurrence, which has never been upheld or followed by the Supreme Court, it's simply... Well, but it has been followed by our court. That's probably enough to bind this panel. But in a very limited circumstances, it's been applied only in situations involving the jail conditions, that sort of thing, and where every opportunity, every effort has been made, there has been diligence in pursuing whatever rights you may have. Essentially what the appellants are asking this court to hold is that habeas corpus and Heck are one and the same. And if you don't have the ability to bring a petition for rid of habeas corpus, then Heck doesn't apply, period. It doesn't matter what the circumstances are. And the Supreme Court has certainly not held that, or it wouldn't have ruled the way it did in Spencer from the beginning. In a case such as this, where there was an opportunity to appeal that was not taken, that should be the end of the analysis. Heck applies and properly applies. And if the court does uphold the judgment as to the other plaintiffs, then of course it becomes harmless anyway, because there's no reason to believe that Mr. Cortez's case would have been handled any differently than the other plaintiffs. We have a jury that determined, looked at all of these facts, found that there had been no constitutional violation, found that the officers had acted reasonably, which is the benchmark of a Fourth Amendment claim. What plaintiffs have asked for in terms of the instructions is basically a directed verdict. They're arguing that the jury should have been told, these were constitutional violations, I don't even know why you're here, thank you. Counselor, you're well over your time. Unless the court has any other questions? Okay. Thank you, Ms. Berger. Mr. Crook, you have time reserved. Two minutes, one minute, nine seconds. Not a robbery, a beer run, petty theft, six bottles of beer. Whether they're on the wall or not, I don't know, but that's what we're talking about here. Not a robbery. With regard to the pat-down searches for weapons, Ramirez v. City of Buena Park by this court is, I think, a dispositive decision. They never mention it in their opposition brief. Yes, as a matter of law, the jury should have been instructed the pat-down searches were unlawful. The detentions of plaintiffs were unlawful. And finally, I see it a lot in the briefs. You've heard or hear any argument, Javier Cortez matched the description of the suspects. Well, it's true, he's a young male Hispanic. Not a juvenile, but a male Hispanic. It's interesting to note the facts here. He's never questioned about possible involvement in this beer run. He's never detained for that reason. And most tellingly, when they do the field show-up for their beer run suspects, who is not included in the field show-up? Javier Cortez is not included. I think the actions of the officers that night speaks pretty clearly. Whatever information they had about their beer run suspects, they knew that Javier Cortez wasn't in that group. He was the guy who was telling them, you can't enter. Unless there are further questions, I'll submit and save my 20 seconds for the next appeal. All right. Thank you, Mr. Cook. We thank both counsel for the argument. Lyle v. City of Los Angeles is ordered submitted. And with that, we have concluded our sitting for the week. The court is adjourned.
judges: Foote, Bybee, Bea